**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**NELSON RIVAS,**

      **Petitioner,**

**v.**                                                    **Civil Action No. 2:10cv98**
                                                           **(Judge Bailey)**

**JAMES N. CROSS, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* petitioner initiated this § 2241 habeas corpus on August 10, 2010 (dckt. 1) and paid the required filing fee on August 19, 2010 (dckt. 4). On August 30, 2010, the undersigned conducted an initial review of the file, determined that summary dismissal was not warranted, and directed the respondent to show cause why the petition should not be granted. (Dckt. 6)

The respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Response to Show Cause Order on October 27, 2010. (Dckt. 11) Because the petitioner is proceeding without counsel, the Court issued a Roseboro Notice on November 22, 2010 (dckt. 16), advising him of his right to file a response to the respondent's motion. The petitioner filed a response in opposition to the respondent's motion on December 21, 2010. (Dckt. 22)

### II. Contentions of Parties

**A. The Petition**

In the petition, the petitioner asserts that he received an incident report for possession of drugs in violation of Bureau of Prisons ("BOP") Code 113. (Dckt. 1 at 1) The incident occurred on December 15, 2009. Id. On February 18, 2010, the petitioner received a disciplinary hearing where

he was found guilty of the charge and received the following sanctions: (1) 40 days loss of good time; (2) one year loss of visitation privileges; (3) six months out of Unicor with no pay; and (4) one year minus pay. Id. The petitioner appealed the findings and sanctions, alleging that the drug was never sent to an outside lab for testing. Id. The petitioner's appeals were rejected. Id. at 2.

According to the petitioner's statement of the case, his cell was searched on December 15, 2009. Id. During that search, a "small torn piece of an oatmeal bag that contained a small amount of a green leafy substance" was found. Id. The bag was found at the foot of the bunk beds, near the doorway of the cell. Id. The petitioner asserts that although he had not received a single incident report in his entire 19 years of incarceration, he was given an incident report for possession of the alleged drug. Id. at 2-3. Moreover, the petitioner asserts that he is innocent of this charge and that he has maintained his innocence from day one. Id. at 3.

The petitioner received a hearing before the Unit Discipline Committee ("UDC") on January 27, 2010. Id. The petitioner asserts that the hearing was called without any prior warning, that he denied the charges, and that he requested the substance be tested at an outside laboratory. Id. The UDC recommended that the charges be referred to a Discipline Hearing Office ("DHO"), and a DHO hearing was conducted on February 18, 2010. Id.

With this factual and procedural background in mind, the petitioner raises the following grounds for relief:

(1) his due process rights were violated when his initial hearing was conducted without warning and well beyond the 72-hour time limitation;

(2) his due process rights were violated when he was found guilty of possession of an illegal substance without any proof of what that substance really was from a certified or

independent and qualified lab; and

(3) his Eighth Amendment right to be free from cruel and unusual punishment was violated when "he was found guilty of a BOP offense without certified proof that the specific offense petitioner was charged with was what the staff member claimed it was."

Id. at 3-4

As relief, the petitioner seeks a hearing on the matter, and an Order vacating the institutional guilty finding, reinstating his loss of good time and visitation privileges, and vacating his sanctions with respect to Unicor. Id. at 4.

Furthermore, the petitioner addresses the issue of exhaustion of administrative remedies in his complaint. Specifically, he asserts that four days after his February 18, 2010 DHO hearing, the petitioner filed a BP-8. Id. at 5. The petitioner alleges that the BP-8 was never answered and that he was misdirected by Mr. Pulice, Mr. Davis and Mr. Moore on the process for exhausting his administrative remedies. Id. The petitioner asserts that when he requested a BP-9 form from those individuals they told him that he did not need to file a BP-8 or BP-9 and that instead, he should file an appeal of his DHO hearing directly with the Regional Office. Id. The petitioner asserts that this "misinformation" caused him to waste time, so that when he did file his BP-9 it was rejected as untimely, as were his Regional and Central Office appeals.[1] Id.

## II. The Respondent's Motion and Response

---

[1] It appears that the petitioner has not properly exhausted his administrative remedies. However, because the respondent did not raise an exhaustion defense, the Court will make no findings with regard to this matter. The Court notes, however, that the petitioner was not misadvised by staff as to the proper procedure for challenging his DHO hearing. Pursuant to 28 C.F.R. § 542.14(d) (2), DHO appeals are not initiated at the institutional level by filing a BP-8 and BP-9. Instead, DHO appeals are submitted directly to the Regional Office.

3

In his motion and response, the respondent asserts that on December 15, 2009, staff member Mr. LaChance conducted a search of the petitioner's cell and found a small piece of an oatmeal bag in a book at the bottom of the bunk beds in petitioners' cell. (Dckt. 12 at 5) The bag contained a green leafy substance and was taken to Lt. Robert Brinson for testing. Id. Lt. Brinson tested the substance with a Narcotics Identification System drug testing kit ("NIK"). Id. The substance tested positive for marijuana. Id.

As a result, the petitioner received an incident report that same day, charging him with a Code 113 violation -- possession of any narcotic, marijuana, drugs or related paraphernalia not prescribed by medical staff. Id. According to Lt. Brinson, when presented with the incident report, the petitioner stated "the green leafy substance is mine." Id.

A UDC hearing was conducted on January 27, 2010. Id. At the hearing, the plaintiff stated that he had nothing to say, and due to the seriousness of the charges, the report was referred to a DHO. Id. The petitioner was given a notice of his rights and a DHO hearing was held on February 18, 2010. Id. at 6. At the hearing, the petitioner waived his right to staff representation and denied the charge. Id. He also requested witnesses appear and they were called to give testimony. Id. The DHO found that the petitioner had committed the prohibited act and sanctioned him: (1) 40 days loss of good conduct time; (2) 30 days disciplinary segregation, suspended for 180 days pending clear conduct; (3) one year loss of visiting privileges, followed by six months of no contact visiting; and (4) six months loss of Unicor privileges. Id.

As grounds for dismissal, the respondent asserts:

(1) the petitioner received all of the process due him in an inmate disciplinary action because there is no protected liberty interest in a UDC hearing where no sanctions are given and

4

where the petitioner cannot show he was prejudiced by the delay; and

(2) the evidence relied upon by the DHO was sufficient to sustain the finding of guilt.

## III. The Petitioner's Response

In his response, the petitioner first asserts that the search of his cell on December 15, 2009, was part of a "mass search" of the prison during a lock-down. (Dckt. 22 at 2) The petitioner asserts that he was taken from his cell and locked in a shower while an outside civilian woman searched his cell. Id. The petitioner asserts that there were two other inmates in the shower area with him who witnessed the women search his cell. Id. Later, the petitioner was approached by Lt. Brinson and told that he and his cellmate would be escorted to the Special Housing Unit ("SHU") if one of them did not take the "shot" for the code violation. Id. The plaintiff asserts that he "accepted the shot" so both he and his cellmate would not be punished. Id. However, the petitioner asserts that he never stated that the green leafy substance belonged to him, and that he reserved his right to contest the facts surrounding the charge. Id. Moreover, the petitioner asserts that the drug test kits were faulty and that the DHO relied solely on hearsay to find him guilty of the charge. Id. at 3.

Second, the petitioner asserts that the respondent is wrong when he asserts that the petitioner was not prejudiced by the undue delay in his UDC hearing. Id. He asserts that it was 43 days after the incident before he received his UDC hearing and that such a delay is not normal. Id. In fact, the petitioner asserts that in his 19 years of incarceration, he has seen other incident reports thrown out when a hearing is not held with 72 hours. Id. Therefore, not only were his due process rights violated by the delay, his right to equal protection was also violated where his report moved forward when others were not. Id. Moreover, he disputes the respondent's claim that his hearing was delayed due to a pending investigation as he was never notified of any investigation or that it was

5

the cause of the delay in his case. Id. at 3-4. The petitioner further asserts that during the delay, the inmate witnesses who could have testified on his behalf were shipped out to other prisons, thereby causing him prejudice. Id. at 4-5.

Third, the petitioner asserts that at his DHO hearing, he challenged the report because the person who wrote the report did not analyze the green leafy substance and failed to provide an affidavit to support the report, and because the person who actually had analyzed the substance did not testify. Id. at 5. Therefore, the petitioner argued that all of the evidence relied on by the DHO to find him guilty was nothing more than hearsay. Id.

Fourth, the petitioner asserts that the DHO knew that the drug testing kits used at USP-Hazelton are "defective and can[not] be relied upon." Id. To support this contention, the petitioner asserts that he knows of at least two occasions where the test kits returned positive test results on substances that were later determined to be food products. Id. Thus, staff at USP-Hazelton is aware that the test kits are defective and that they should not be relied upon to find a prisoner guilty of possessing drugs. Id. at 5-6.

Fifth, the petitioner disputes the respondent's contention that he has no liberty interest in a UDC hearing. Id. at 6. He also disputes the respondent's contention that the "some evidence" standard applies to a review of a DHO's findings. Id. at 7. Specifically, the petitioner asserts that the "some evidence" standard does not apply where an inmate claims that the drug evidence used against him was not actually drugs. Id. In other words, the "some evidence" standard should not be utilized when there is further testing available to prove an inmate's innocence but the BOP refuses to use it. Id.

Sixth, the petitioner asserts again that the respondent's statement that he was not prejudiced

6

by the delay in his UDC hearing is false. Id. at 8. Notably, the petitioner asserts that because he was denied a timely UDC hearing, he was prejudiced because he lost the ability to call witnesses at the hearing. Id. Those witnesses would have supported his claim that he never admitted that the green leafy substance was his, but only that the shot was his and not his cellmate's. Id. Also, those witnesses might be able to confirm that it was a woman who searched his cell, and that when she came out of the cell, she had nothing in her hand. Id. They might also be able to corroborate the plaintiff's claim that it is common to find strange items stuck in books that come from the library, and that the oatmeal bag could have been put in there by any inmate who had previously come in contact with the book. Id. at 9.

Seventh, the petitioner notes that the only reason he "accepted" the shot was because he frequently reads books but his cellmate has no interest in thems. Id. Therefore, in all likelihood, the book was his. Id.

Next, the petitioner points out what he believes are several inconsistencies or misleading statements in the affidavits in support of the respondent's motion. Id. Along the same lines, he asserts that the information relied upon by the respondent is faulty and should not be believed. Id. at 10. Moreover, the petitioner questions the fact that he has never been shown the book, nor the alleged drugs, and that he cannot even verify that any such thing was found, that it was actually in his cell, or that it was a book that he possessed. Id.

Finally, the petitioner asks the Court to consider that in his 19 years of incarceration, he has never received an incident report before this time, and given that he has been housed in maximum security prisons were drugs, gangs and violence are common place, this is very rare and difficult to accomplish. Id. at 11. Moreover, when he did not receive his UDC hearing within 72 hours, the

7

petitioner believed that it had been "thrown out," and he was therefore, unprepared when he was given a UDC hearing 43 days later without notice. Id. In closing, the petitioner asks the Court to also consider the fact that during his incarceration he has been involved in college education classes, various drug and rehabilitative programs, and numerous intermural activities. Id.

### III. Analysis

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

In Wolff v. McDonnell, 418 U.S. 539, 556 (1974), the Supreme Court of the United States found that although prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution." Therefore, the Supreme Court found that an inmate was entitled to some due process protections during a DHO hearing. Id. Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. Id. On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. Id at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary

decision by the fact finder.  Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 117 S.Ct. 1584 (1985).  The Supreme Court has not, however, extended such procedural due process protections to a UDC hearing where only the loss of minor privileges is at stake.  See Wolff at 572, n.19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time [or imposition of disciplinary confinement] would also be required for the imposition of lesser penalties such as the *loss of privileges*.") (emphasis added).

## A. Petitioner's UDC Hearing

The procedural protections required at a UDC hearing are found at 28 C.F.R. § 541.15.  In those proceedings, staff is required to give each inmate charged with violating a BOP rule, a written copy of the charges within 24 hours of the time staff became aware of the incident.  § 541.15(a).  In addition, a UDC hearing should ordinarily be held within three working days from the time staff became aware of the inmate's involvement. § 541.15(b).  The inmate is entitled to be present at the UDC hearing, except during deliberations of the decisionmakers.  § 541.15(c).  Further, an inmate is entitled to make a statement and to present documentary evidence on his own behalf.  § 541.15 (d).  There is no requirement, however, that an inmate is entitled to present witnesses at a UDC hearing.  § 541.15.

Moreover, the regulations limit the types of sanctions that may be imposed by a UDC hearing.  Id.  The UDC may only impose minor sanctions.  § 541.15 (h).  A violation of the rules that is either serious, or warrants more severe sanctions, must be referred to a DHO.  Id.

In this case, the petitioner did not receive sanctions at his UDC hearing.  Rather, the charges were referred to a DHO for further consideration.  Thus, the plaintiff had no liberty interest in his UDC hearing.  See Sandin v. Connor, 515 U.S. 472, 484 (1996) (liberty interests are "generally

9

limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Thus, the Wolff procedural due process protections do not apply to the petitioner's UDC hearing. See Martin v. Foti, 561 F.Supp. 252 (E.D.La. 1983) (in order to qualify for due process protection, the trier of fact must determine whether there is a liberty interest at stake, and if there is, what specific procedures are required to adequately protect such interest); O'Callaghan v. Anderson, 514 F.Supp. 765 (M.D.Pa. 1981) (an inmate has no liberty interest in calling witnesses at a UDC hearing); see also Price v. Johnson, 334 U.S. 266, 285 (1948) (lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system").

Even if he had, the petitioner challenges his UDC hearing on two grounds: (1) failure to conduct the hearing within 72 hours of staff becoming aware of the incident; and (2) conducting the hearing without prior warning. As to the first ground, 28 C.F.R. § 541.15(b) provides that a UDC hearing should *ordinarily* be held within three working days from the time staff became aware of the inmate's involvement. (Emphasis added). This language is not mandatory and does not create a liberty interest in receiving the hearing within 72 hours. See Kentucky v. Dept. of Corr. v. Thompson, 490 U.S. 454, 462-463 (1989) (regulations must contain "explicitly mandatory language" to create a liberty interest); see also Smith v. Bureau of Prisons, 2004 WL 3397938 *5 (W.D.Va. Oct. 22, 2004) (an inmate has no liberty interest under Wolff, or under BOP regulations, in receiving an incident report within a certain period of time after an alleged event occurs).

Moreover, the petitioner himself has provided the Court with evidence that his UDC hearing

was delayed due to an investigation. (Dckt. 1 at Ex. A) In a memorandum to the Warden on January 14, 2010, Unit Manager Pulice writes:

> The above-named inmate [Nelson Rivas, Register Number 03254-089] received an incident report for Possession of Drugs, Code 113. The incident occurred on December 15, 2009. Incident Report number 1955471 was prepared on December 15, 2009, regarding this incident.
> On December 15, 2009, the incident report was investigated and a copy of the incident report was provided to inmate Rivas. The incident report was forwarded to the Unit Disciplinary Committee (UDC) for processing.
> On December 18, 2009, the UDC returned the incident report to the Investigating Lieutenant for additional investigation. On January 14, 2010, the incident report reinvestigation was completed, and the incident report was once again returned to the UDC for processing.
> We are requesting approval to proceed with the processing of Incident Report 1955471 despite the delay.

Id. This request was approved by the Warden sometime thereafter, and the petitioner's UDC hearing was held on January 27, 2010.

Clearly, the petitioner's incident report was referred to the UDC in a timely manner. His hearing was not conducted within 72 hours because the UDC requested further investigation.[2] Pursuant to 28 C.F.R. § 541.15(a), a UDC hearing is not held until after the investigation is complete. Because the investigation was not complete until January 14, 2010, and staff sought approval of the Warden before moving forward, the delay in this case was not unreasonable or impermissible, and the petitioner's due process rights were not violated by the delay.[3]

As to his claim that his UDC hearing was conducted without warning, even assuming this

---

[2]Although the petitioner asserts that he was never informed of any reinvestigation, there is no requirement in the applicable regulations that he be so advised. Moreover, to the extent that the petitioner asserts that no reinvestigation actually took place, those claims are merely conclusory and self-serving. The petitioner provides no evidence to support this claim.

[3]The petitioner's claim that the delay in his UDC hearing was prejudicial because some of his witnesses were no longer available is without merit. An inmate is not even entitled to call witnesses at a UDC hearing. See 28 C.F.R. § 541.15.

allegation is true, unlike a DHO hearing,[4] there is no requirement that an inmate be given prior warning of a UDC hearing. Accordingly, the petitioner's due process rights were not violated when he was not given prior notice of his UDC hearing.

**B.  Failure to Send Substance to Outside Lab and Faulty Drug Test Claims**

In this ground, the petitioner asserts that his due process rights were violated when the BOP failed to allow him the opportunity to obtain additional testing on the green leafy substance by a certified or independent and qualified outside laboratory. The petitioner further asserts that this failure violated his right to be free from cruel and unusual punishment.

Under Wolff, the petitioner must have the ability to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety. "Wolff does not, however, guarantee prisoners the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity." Piggie v. McBride, 277 F.3d 922, 924 (7th Cir. 2002); see also Seggara v. McDade 706 F. 2d 1301 (4th Cir. 1983). In fact, the Supreme Court has stated that due process does not require evidence that "logically preclude[s] any conclusion but the one reached by the disciplinary board." Superintendent v. Hill, 472 U.S. at 457.

In a case analogous to this one, the Eighth Circuit Court of Appeals found that although inmates are allowed to present a defense at a disciplinary hearing, they are not entitled to have confirmatory testing done. See Spence v. Farrier, 807 F.2d 753 (8th Cir. 1986). In so deciding, the Eighth Circuit reasoned that allowing inmates to routinely challenge the reliability of drug tests "would seriously interfere with the institutional goal of drug deterrence and prompt resolution of

---

[4]See 28 C.F.R. 541.17(a) states: "The Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the Discipline Hearing Officer . . ."; see also Wolff v. McDonnell, 418 U.S. at 556.

12

drug related infractions." Id. at 756.  Moreover, although drug tests are not 100% reliable, "the margin of error is insignificant in light of institutional goals" and prison officials should not be required to provide "all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings." Id.  Other courts to address this issue, including this one,[5] have made similar findings.[6]

Here, it is not disputed that at his disciplinary hearing, the petitioner otherwise received all of the necessary due process protections enumerated in Wolff.  Additionally, the positive results of the drug testing kit provided "some evidence" to support the guilty finding as required by Hill,[7] and the clear weight of authority shows that petitioner was not entitled to additional testing.  Moreover,

---

[5]See Wegener v. Gutierrez, Civil Action No. 2:06cv26 (N.D.W.Va. May 30, 2007).

[6]See Peranzo v. Coughlin, 850 F.2d 125 (2d Cir. 1988) (urinalysis drug test results may be relied upon as sufficient evidence in prison disciplinary proceedings); Miller v. Moran, 1992 WL 119131 (D.R.I. May 6, 1992) ( inmates not entitled to alternative drug testing methods which could be used at a disciplinary hearing to exculpate them); Batista v. Goord, 2005 WL 2179420 (N.D.N.Y. Aug. 28 2005) (inmate has no due process right to have substance retested at an outside laboratory) (citing Basil v. D.C. Dept. of Corr., 89-CV-1231, 1990 U.S. Dist. LEXIS 2951, at *9-10 (D.D.C. March 19, 1990) ("Although the consequences stemming from plaintiffs' disciplinary action based on what may have been erroneous drug test results are unfortunate, there is simply no constitutional guarantee that all executive decision making must comply with standards that assure error-free determinations."); DeLeon v. Dretke, 2006 WL 1281078 (S.D.Tex. May 4, 2006) (positive urinalysis test sufficient to meet "some evidence" standard); Anderson v. McKune, 23 Kan.App.2d 803, 937 P.2d 16 (1997) (due process does not require that prison officials allow an inmate to get an independent drug test to prove his innocence); see also Baxter v. Palmigiano, 425 U.S. 308 (1976) (ordinarily the right to present evidence is basic to a fair trial, but an inmate's right to present evidence is necessarily circumscribed by the penological need to provide swift discipline).

[7]The petitioner provides absolutely no caselaw to support his contention that the "some evidence" standard of Hill is not applicable to this case, or that there is an exception to this standard when the case involves drugs and/or drug testing.  It appears that the petitioner's argument is merely his own wishful thinking.

13

the fact that the tests may not be 100% reliable is not grounds for relief.[8] Spence v. Farrier, 807 F.2d at 756. Therefore, the undersigned concludes that the petitioner's constitutional rights were not violated when the BOP refused to allow additional testing of the green leafy substance at a certified or independent and qualified outside laboratory, and this ground should be denied.

**C. Petitioners' Equal Protection**

To be successful on an equal protection claim, the plaintiff must demonstrate "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001). If the plaintiff makes such showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id.

In this case, the petitioner states that the BOP violated his right to equal protection by failing to "throw out" his incident report when his UDC hearing was not conducted within 72 hours. In support of this claim, the petitioner asserts that he has seen in other inmates' reports thrown out in similar circumstances. However, the petitioner does not assert that those inmates were similarly situated[9] or that his "unequal" treatment was the result of intentional discrimination. Thus, the petitioner's conclusory and unsupported statements are insufficient to state an equal protection claim

---

[8]With respect to this claim, the petitioner asserts that in two other cases, the drug testing kits yielded positive results on substances that were later determined to be food products. However, as with most tests, results are not always 100% reliable, and false positives do occur. Nonetheless, the petitioner submits no evidence to show that further testing would have proved the results false in this case. In fact, the petitioner cannot make this assertion, while maintaining his claim that the green leafy substance was not his, and that he did not even know it was in the book. If that were the case, he simply could not know what the green leafy substance was, and it is just as likely that the results were accurate. Simply because on two other occasions the tests yielded false positives, does not mean that the tests are always faulty, or that there was a false positive in this case.

[9]The petitioner does not assert that in those other cases there was a reinvestigation of the charges or that the Warden had approved the delay in holding the UDC hearing.

and he is not entitled to relief on this ground.

## IV. Recommendation

For the reasons stated, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 11) be **GRANTED** and the petitioner's § 2241 petition (dckt. 1) be **DENIED and DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to the petitioner's last known address as shown on the docket, and to counsel of record via electronic means.

DATED: April 1, 2011.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE